UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VOLVO FINANCIAL SERVICES F/K/A VOLVO COMMERCIAL FINANCE, a division of VFS US LLC, a Delaware Limited Liability Company, | * * * * * | CIV 08-4196-RAL |
| Plaintiff, | * * | OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY |
| vs. | * * | JUDGMENT |
| RICHARD GARTNER, an individual, | * * | |
| Defendant, | * | |

Plaintiff Volvo Financial Services f/k/a Volvo Commercial Finance, a division of VFS US LLC, a Delaware limited liability company ("VFS"), filed a Motion for Summary Judgment (Doc. 34) under Rule 56 of the Federal Rules of Civil Procedure, awarding Plaintiff the relief sought in its Complaint (Doc. 1). Defendant is a resident of South Dakota. This is a breach of contract case within the diversity jurisdiction of this Court. Plaintiff filed its motion and supporting materials - a Memorandum in Support (Doc. 35), Statement of Undisputed Material Facts (Doc. 36), and Affidavit of Tracie Dean (Doc. 37) - on February 5, 2010. The deadline for Defendant's filing of a responsive brief was February 26, 2010 under D.S.D. LR 7.1(B), which requires opposing parties to file a responsive brief on or before 21 calendar days after service of the motion and supporting materials. Defendant has not filed a responsive brief, so under D.S.D. LR 56.1(D), "[a]ll material facts set forth in the movant's statement of material facts will be deemed to be admitted." In addition, Defendant has not filed responses to VFS' Requests for Admissions and more than 30 days have passed since service, so under Rule 36(a)(3) of the Federal Rules of Civil Procedure, all of the Requests

are deemed admitted.

## I. Facts

Plaintiff filed its Complaint (Doc. 1) on December 5, 2008, claiming a breach by Defendant of a continuing guaranty of contracts for the sale of two Volvo trucks. In its Answer, Defendant admitted that the alleged contracts at issue were entered into, but stated that it "remits the Plaintiff to its strict burden of proof as to an accounting as to payments and the balance owed against such equipment." (Doc. 14 at ¶ 3).

On October 14, 2005, Gartner Transportation, Inc. ("Gartner Transportation") executed a Credit Sales Contract ("First Credit Sales Contract") with GATR of Sauk Rapids, Inc. ("GATR"), whereby Gartner Transportation agreed to finance the purchase of a 2006 Volvo truck ("First Truck"). Gartner Transportation agreed to finance the purchase of the truck for $135,001.68, to be paid in 66 monthly installments of $2,045.48, commencing November 14, 2005. Immediately upon execution of the First Credit Sales Contract, GATR and VFS executed an Assignment of the First Credit Sales Contract. Under the terms of the Assignment, GATR transferred and conveyed to VFS the First Credit Sales Contract, and VFS assumed all obligations, rights, and remedies arising under the First Credit Sales Contract.

On November 5, 2005, Defendant executed and delivered to VFS an instrument, in writing, by which he personally guaranteed to VFS payment of all of the obligations of Gartner Transportation then existing or thereafter accrued, together with accrued interest, costs, and attorneys' fees incurred in the collection thereof and the enforcement of said Guaranty ("Continuing Guaranty").

On January 18, 2006, Gartner Transportation executed a second Credit Sales Contract ("Second Credit Sales Contract") with Dakota Volvo Trucks, Inc. ("Dakota Volvo"), whereby Gartner Transportation agreed to finance the purchase of another 2006 Volvo truck ("Second Truck"). Gartner Transportation agreed to finance the purchase of the truck for $151,943.40, to be paid in 60 monthly installments of $2,532.39, commencing March 5, 2006. Immediately upon execution of the Second Credit Sales Contract, Dakota Volvo and VFS executed an Assignment of the Second Credit Sales Contract. Under the terms of the Assignment, Dakota Volvo transferred and conveyed to VFS the Second Credit Sales Contract, and VFS assumed all obligations, rights, and remedies arising under the Second Credit Sales Contract.

The First and Second Credit Sales Contracts provide that Gartner Transportation will pay all expenses and costs incurred by VFS in enforcing the First and Second Sales Contracts, including reasonable attorney's fees.

Gartner Transportation and VFS entered into a Modification Agreement of the First Credit Sales Contract on October 22, 2007 ("First Modification Agreement"). Under the terms of the First Modification Agreement, Gartner Transportation admitted that the total amount outstanding under the First Credit Sales Contract was $77,113.03 and that it was in default under the First Credit Sales Contract due to failure to pay $6,646.35 in delinquent payments and late fees. Gartner Transportation agreed that the modified monthly due date would be the 14th day of each month, commencing on November 14, 2007, for 42 consecutive monthly payments of $2,045.48 and three consecutive monthly payments of $2,922.20. In his capacity as Guarantor, Defendant acknowledged the First Modification

Agreement.

Gartner Transportation and VFS also entered into a Modification Agreement of the Second Credit Sales Contract on October 22, 2007 ("Second Modification Agreement"). Under the terms of this agreement, Gartner Transportation admitted that the total amount outstanding under the Second Credit Sales Contract was $89,233.01 and that it was in default under the Second Credit Sales Contract due to failure to pay $8,349.89 in delinquent payments and late fees. Gartner Transportation agreed that the modified monthly due date would be the 5th day of each month, commencing on November 5, 2007, for 40 consecutive monthly payments of $2,532.39 and three consecutive monthly payments of $3,781.26. In his capacity as Guarantor the Defendant acknowledged the Second Modification Agreement.

The First and Second Credit Sales Contracts, the Guaranty, the Continuing Guaranty, and the First and Second Modification Agreements all contained a choice of law provision stating that the contracts are governed by the laws of North Carolina. The assignments of the First and Second Credit Sales Contracts incorporate by reference the terms of the First and Second Credit Sales Contracts, respectively.

Gartner Transportation defaulted under the terms of the First and Second Credit Sales Contracts and First and Second Modification Agreements by failing to remit the payments due under the First and Second Modification Agreement. Gartner Transportation remains in default of its obligations under the First and Second Credit Sales Contracts. VFS provided Gartner Transportation and Defendant notice of the defaults, but both have refused to cure the defaults.

At the commencement of this action, VFS accelerated any amounts not already due

and owed on the First and Second Credit Sales Contracts and First and Second Modification Agreements. On August 13, 2009, the Sheriff assisted in the seizure of the First Truck. Under the terms of First Credit Sales Contract, upon the sale of the First Truck, the proceeds of the sale will be applied to Defendant's indebtedness after deduction of all attorneys' fees incurred by VFS. Once the proceeds are applied to Defendant's indebtedness, the Contracts provide that Defendant is liable for, and must promptly pay, any deficiency resulting from the disposition of the First Truck.

On February 2, 2010, VFS served Plaintiff's Combined Written Discovery to Defendant (Doc. 44-1), including various Requests for Admission. To date, Defendant has not responded to the discovery requests, so the Requests are deemed admitted under Rule 36(a)(3). These admissions include the following:

> Admit that Gartner Transportation defaulted under the terms of the First and Second Credit Sales Contracts and First and Second Modification Agreements.
>
> Admit that Gartner Transportation remains in default of its obligations under the First and Second Credit Sales Contract.
>
> Admit that you are obligated to pay all expenses and costs incurred by VFS in enforcing the First and Second Credit Sales Contract including, but not limited to, reasonable attorneys' fees.
>
> Admit that the amount due and owing by you to VFS on the First Credit Sales Contract and First Modification Agreement is the following deficiency balance in the amount of $34,444.80, plus per diem interest at $14.35 thereafter, attorneys' fees, costs and post-judgment interest.
>
> Admit that the amount due and owing by you to VFS on the Second Credit Sales Contract and Second Modification Agreement is $92,744.60, plus per diem interest at $35.76 thereafter, attorneys' fees, costs and post-judgment interest.

As of January 23, 2010, Defendant is obligated to VFS under the terms of the First Credit Sales Contract and First Modification Agreement for the following amount: $34,444.80 plus per diem interest at $14.35 thereafter, and attorneys' fees and costs. Under the terms of the Second Credit Sales Contract and Second Modification Agreement, at the time of the making of the Motion for Summary Judgment, Defendant is obligated to VFS for the following amount: $92,744.60, plus per diem interest at $35.76 thereafter, and attorneys' fees and costs. Defendant subsequently filed a Reply in Support of Motion for Summary Judgment (Doc. 42), indicating that a sale of the Second Truck reduced the amount owed on the Second Credit Sales Contract and Second Modification Agreement to $65,750.02 plus $32.88 per diem, and further referred to a different amount for per diem interest on the First Truck debt.

## I. Standard of Review

Summary judgment is proper if, viewing all the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Gilbert v. Des Moines Area Cmty. Coll., 495 F.3d 906, 913 (8th Cir. 2007); Fed. R. Civ. P. 56. To survive a motion for summary judgment, the non-moving party must point to a specific fact showing that a genuine issue of material fact exists. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

Federal courts sitting in diversity apply the choice-of-law rules of the forum state. Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009) (citing Prudential Ins. Co. of

Am. v. Kamrath, 475 F.3d 920, 924 (8th Cir. 2007)). Under South Dakota law, "a contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." SDCL 53-1-4; O'Neill Farms, Inc. v. Reinert, 2010 SD 25, ¶ 12, 780 N.W.2d 55. "The test of the place of a contract is the place where the last act is done by either of the parties which is necessary to complete the contract and give it validity." Id. (quoting Briggs v. United Servs. Life Ins. Co., 80 SD 26, 30, 117 N.W.2d 804, 807 (1962)). The Supreme Court of South Dakota has "generally recognized that parties may agree to be bound by the law of a particular state." Butler Mach. Co. v. Morris Constr. Co., 2004 SD 81, ¶ 6, 682 N.W.2d 773, 776 (quoting Dunes Hospitality, L.L.C. v. Country Kitchen Int'l., Inc, 2001 SD 36, ¶ 10, 623 N.W.2d 484, 488)). However, South Dakota courts will "not give effect to laws of other jurisdictions if they are contrary to the public policy of South Dakota." Id.

South Dakota choice-of-law rules, in conjunction with contractual choice-of-law provisions, require the contracts at issue in this case to be interpreted according to the laws of North Carolina. VFS has its primary place of business in North Carolina. Although the trucks sold under the Contracts were located in South Dakota and Gartner, Gartner Transportation, GATR, and Dakota Volvo have their principal places of business in South Dakota, none of the contracts specified a place where the contracts were to be performed. The contracts did, however, specify that they were made in North Carolina. The First and Second Credit Sales Contracts each included a "Governing Law" provision, which stated that "[t]his Contract is effective when accepted by Assignee at its principal place of business in North Carolina and shall be governed by and construed in accordance with the internal laws

of the State of North Carolina without regard to principles of conflict of laws." The Continuing Guaranty included a clause stating that [t]his Guaranty shall be governed by the internal laws of the State of North Carolina. Any provisions contrary to, prohibited by, or invalid under applicable laws or regulations shall be revised to the minimum extent necessary to make such provision enforceable but shall not invalidate the remaining provisions of this Guaranty." The First and Second Modification Agreements included a "Choice of Law" section, stating that [t]his Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina, without giving effect to conflicts of law principles." Under each contract at issue in this case, North Carolina is the place where the contract was made.

Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Schlieper v. Johnson, 672 S.E.2d 548, 553 (N.C. Ct. App. 2009) (quoting Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000). A contract "requires assent, mutuality, and definite terms." Id. (citing Horton v. Humble Oil & Refining Co., 122 S.E.2d 716, 719 (N.C. 1961).

The Continuing Guaranty is a valid contract between Plaintiff and Defendant, as there has been assent, mutuality, and definite terms. As part of the Continuing Guaranty, Defendant agreed to personally guarantee to Plaintiff payment of all of Gartner Transportation's obligations to Plaintiff, in return for Plaintiff providing Gartner Transportation credit to purchase the trucks. Gartner Transportation has defaulted under the terms of the First and Second Credit Sales Contracts and First and Second Modification Agreements by failing to remit the payments due under the two modifications agreements,

thereby triggering Defendant's obligation to remit payment under those contracts. Because, despite notice of the default, Defendant has refused to make the payments due, he has breached the Continuing Guaranty. As a result, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 34) is GRANTED. It is further

ORDERED that Plaintiff file an affidavit within 14 days of this order setting forth a detailed calculation of what amount Defendant presently owes, with an explanation of how the amount was calculated. Plaintiff shall also advise of the status of Defendant's bankruptcy filing and whether an automatic stay exists. It is further

ORDERED that Defendant shall have 7 days thereafter within which to object or respond to that affidavit. It is further

ORDERED that Plaintiff shall submit a computation of its attorney's fees in this case, including the name, position, hourly rate, number of hours, and corresponding fees for each attorney, paralegal, and legal assistant who worked on the case, within 21 days of this order, if it wishes to recover such items. It is further

ORDERED that Plaintiff is awarded costs under 28 U.S.C. § 1940 in an amount to be determined by the Clerk upon the filing of a Bill of Costs.

Dated May 4, 2010.

BY THE COURT:

_____
ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE